UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

KERRY PORTER                                                                            PLAINTIFF

v.                                          CIVIL ACTION NO. 3:12-CV-00829-CRS

LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT, et al.                                DEFENDANTS

**MEMORANDUM OPINION**

I.      Introduction

This matter is before the Court on the motion of Defendants Louisville/Jefferson County Metro Government ("Metro Government") and the City of Louisville ("the City") (collectively, "Defendants") for reconsideration under Federal Rule of Civil Procedure 54(b), ECF No. 272. Plaintiff Kerry Porter responded, ECF No. 277. Defendants replied, ECF No. 278. For the reasons set forth below, the Court will grant Defendants' motion to reconsider the ruling on their motion for summary judgment.

II.      Background

On September 26, 2016, Defendants moved for summary judgment on all claims against them.[1] Mot. Summ. J., ECF No. 232. On May 2, 2017, this Court ruled on Defendants' summary judgment motion. Order, ECF No. 265. The Court granted Defendants' motion with the exception of Count VIII, which asserts a state law claim for negligent supervision. *Id.* Among the

---

[1] Defendants' motion for summary judgment was also filed by Gary Kearney, Thomas Schneider, Tony Finch, Lawrence Zehnder, and Gene Sherrard. Mot. Summ. J. 1, ECF No. 232. The Court will discuss only rulings made on claims against the Metro Government and the City for the purposes of this memorandum opinion.

1

claims dismissed was Count VI which asserted a *Monell* claim against Defendants under 42 U.S.C. § 1983. *Id.*; Mem. Op. 59, 66, ECF No. 264.

In granting summary judgment in favor of Defendants on Porter's *Monell* claim, the Court determined that Defendants had presented unchallenged evidence that there was training on, and a written policy concerning the handling of exculpatory evidence. Mem. Op. 61–62, 66, ECF No. 264.

In his negligent supervision claim, Porter alleges that Defendants "had a duty to properly train and supervise" the Louisville Police Department officers and to "provide adequate policies" and "were grossly negligent and negligent in the training, supervision and discipline of the . . . officers." Compl. ¶¶ 125–26, ECF No. 1. He asserts that better training and supervision and the enactment of additional and different policies would have prevented the officers from "fabricating evidence, fabricating witness statements, and concealing material impeachment evidence," which resulted in Porter "being deprived of his right to due process, and his right to be free from false arrest, false imprisonment, and wrongful conviction." *Id.* ¶¶ 125, 126.

In denying Defendants' motion on the negligent supervision claim, the Court held:

> The City and Metro Government present to the Court the bare assertion that "Plaintiff has asserted a state law claim of negligent supervision against the municipal defendants . . . Plaintiff has failed to establish that his rights were violated, therefore, his claim of negligent supervision fails." Louisville Defs.' Mem. Supp. Mot. Summ. J. 52–58, ECF No. 232-1. They offer no other analysis in support of their motion for summary judgment on this claim. As discussed above, the evidence indicates that Porter's rights might have been violated. Because the City and Metro Government offer nothing else in support of their motion on the negligent supervision claim against them, the Court will deny summary judgment to them.

Mem. Op. 67, ECF No. 264. In their motion for reconsideration, Defendants ask this Court to reconsider the denial of summary judgment on the negligent supervision claim, urging that their

argument addressing the *Monell* claim made earlier in their brief also supports summary judgment as to the claim alleging negligent supervision. Mot. Recons. 2, ECF No. 272.

III. <u>Legal Standard</u>

Federal Rule of Civil Procedure 54(b) reads, in relevant part, "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Generally, courts will find justification for reconsideration when there is "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)). Reconsideration motions are disfavored and a motion will be denied "unless it either calls . . . attention to an argument or controlling authority that was overlooked or disregarded in the original ruling, presents evidence or argument that could not previously have been submitted, or successfully points out a manifest error of fact or law." *Davie v. Mitchell*, 291 F. Supp. 2d 573, 634 (N.D. Ohio 2003).

Concluding that we must reconsider our denial of summary judgment on Count VIII, the standard for summary judgment also applies herein.

Before granting a motion for summary judgment, the Court must find that "there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]here the moving party has the burden—the plaintiff on a claim for relief or defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (internal quotations and emphasis omitted).

The Court must view the evidence in a light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must show that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence ... of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

IV. <u>Discussion</u>

Defendants ask this Court to reconsider its ruling on Porter's negligent supervision claim and request that this Court grant summary judgment in their favor. Mot. Recons. 2, ECF No. 272. They argue that (1) Porter waived his negligent supervision claim by not offering an argument in his response to Defendants' motion for summary judgment and (2) they incorporated their analysis of Porter's *Monell* claim into their analysis of the negligent supervision claim. *Id.* at 5–6.

First, the Court recognizes an error it made in disregarding a controlling legal principle. Defendants correctly point out that Porter waived his negligent supervision claim when he did not respond to Defendants' motion for summary judgment on that claim. Mot. Recons. 5–6, ECF No. 272. "[A] non-moving party waives an argument by failing to address the argument in [his] response brief." *Keys v. Dart Container Corp.*, No. 1:08-CV-00138-JHM, 2012 WL 2681461, at *7 (W.D. Ky. July 6, 2012) (citing *Maher v. Int'l Paper Co.*, 600 F. Supp. 2d 940, 948 (W.D. Mich. 2009)). Defendants presented an argument—however brief—and Porter did not refute it in

his response. Accordingly, the Court finds that Porter waived his negligent supervision claim against Defendants.

Second, Defendants assert that they adopted the argument regarding the "similar, albeit more stringent *Monell* claim" in seeking judgment on the negligent supervision claim, rather than restating it in full. Mot. Recons. 5, ECF No. 272. Thus, they argue, this Court "inadvertently overlooked or mistakenly disregarded" their argument, invoking the "need to correct a clear error or prevent manifest injustice" justification for reconsideration. Reply 1, 3, ECF No. 278. In his response, Porter argues that Defendants' vague reference to "the reasons set forth above" does not provide an adequate analysis. Resp. Opp. Mot. Recons. 5, ECF No. 277.

Incorporation by reference to an argument applying facts under a different claim and different legal standard is unhelpful. Nevertheless, the Court recognizes that it did not properly consider the application to the negligent supervision claim of the unrefuted facts undergirding the *Monell* analysis. Indeed, the Court finds that these facts apply equally to the negligent supervision claim. In their summary judgment briefs on the *Monell* claim, both parties focused on Defendants' policies, practices, and training. *See id.* at 45; Resp. Mot. Summ. J. 110, 113, 119, ECF No. 240-1. The evidence presented by Defendants establishes that City police officers attended a two-week, 80-hour homicide investigation class after joining the Homicide division. Pierce Dep. 37, ECF No. 242-2. Detectives were required to attend this training class as soon as practicable after joining the division. *Id.* Detectives also received on-the-job training in the form of shadowing more experienced detectives. Kidd Dep. 19, ECF No. 241-19. Additionally, the City had a policy on exculpatory evidence. Burbrink Dep. 79–81, ECF No. 243-11. The Court granted summary judgment in favor of Defendants on the *Monell* claim because the undisputed evidence established that a written policy was in existence and training was required on the use

of exculpatory evidence. Mem. Op. 61–62, 66, ECF No. 264. What Porter urges, however, is that the City should have done more, in light of the fact that Porter was later exonerated. He contends that the City should have had more or better supervision of officers or additional policies to avoid the wrong suffered by Porter. For the reasons stated below, however, Porter's 20/20 hindsight view fails to establish that additional supervision or policies would more likely than not have changed the course of the investigation. In evaluating the possible grounds for liability for negligent supervision under the Restatement (Second) of Agency § 213, it becomes clear that Porter has argued nothing more than that the City could have built a better mousetrap. However, the City was not required to have a better supervisory system than it had, nor one as good as other police departments. Porter has not shown that various perceived flaws in the City's supervisory system in the homicide division contributed to the wrongful conviction of Porter.

Similar to the parties' arguments on the *Monell* claim, Porter alleges in his negligent supervision claim that Defendants "had a duty to properly train and supervise" the Louisville Police Department officers and to "provide adequate policies" and "were grossly negligent and negligent in the training, supervision and discipline of the . . . officers." Compl. ¶¶ 125–26, ECF No. 1. As Defendants showed in their *Monell* analysis, the City had policies and training. And as discussed below, Porter has not shown this Court that those policies and training were inadequate.

As pointed out in the Court's May 2, 2017 memorandum opinion, "Kentucky has adopted the Restatement (Second) of Agency § 213 which illustrates the requirements for establishing a claim of negligent supervision." *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003). Section 213 reads:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

6

> (a) in giving improper or ambiguous orders or in failing to make proper regulations; or
> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others;
> (c) in the supervision of the activity; or
> (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Restatement (Second) of Agency § 213 (1958). There is insufficient evidence to support Porter's claim for negligent supervision under any of these subsections. In his response to Defendants' motion to reconsider, Porter has outlined the evidence that he believes demonstrates Defendants' negligence. Resp. Opp. Mot. Recons. 8–13, ECF No. 277. As the Court determined previously that there can be no claim under respondeat superior, Porter's argument is limited to allegations that Defendants should have employed better or different policies, training, discipline, and supervisory practices. *See id.* The evidence Porter offers does not satisfy any of the four subsections of Section 213 of the Restatement (Second) of Agency.

First, Porter has not identified any "improper or ambiguous orders or [failure] to make proper regulations." *See* Restatement (Second) of Agency § 213(a). Porter presents a list of policies and training that his expert, W.D. Libby, contends Defendants should have had in place, as the City's policies and practices purportedly did not meet the generally accepted standards of investigations at the time of Defendants' investigation of Porter. Libby Report 31, ECF No. 241-21. Libby opines that the lack of such controls directly led to Porter's wrongful conviction. *Id.*

But Libby's opinion offers nothing more than hindsight. To establish negligent supervision, the plaintiff must show that the employer's "failure to exercise ordinary care . . . create[d] a foreseeable risk of harm to a third person." *Dempsey v. City of Lawrenceburg*, No. 3:09-33-DCR, 2010 WL 3825473, at *7 (E.D. Ky. Sept. 23, 2010) (citing *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. Ct. App. 1998)). Foreseeability is determined "by viewing the

7

facts as they reasonably appeared to the party charged with negligence, not as they appear based on hindsight." *James v. Wilson*, 95 S.W.3d 875, 892 (Ky. Ct. App. 2002). In order to meet the negligent supervision standard, Porter needs to have shown that Defendants knew or had reason to know of a risk of wrongful conviction that their policies created. *See Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003). Porter has not made such a showing. He merely offers additional preferable policies that could have been put in place. He has not shown, however, how any given policy would have altered the course of the investigation. Neither has Porter shown that Defendants knew or should have known, at the time of the investigation, that their policies created a risk of wrongful conviction to Porter. Thus the allegation that additional policies should have been in place is too speculative to support a claim that the City was negligent in "failing to make proper regulations." *See* Restatement (Second) of Agency § 213(a).

Porter has not alleged Defendants were negligent or reckless "in the employment of improper persons or instrumentalities in work involving risk of harm to others," thus Restatement (Second) of Agency § 213(b) is not in play.

Finally, Porter has not provided evidence to support an argument that Defendants were negligent or reckless "in the supervision of the activity" or "in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control." *See* Restatement (Second) of Agency § 213(c)–(d). Porter presents as evidence a list of what he perceives to be supervisory shortcomings of how Defendants Pierce, Fraction, and Sherrard supervised officers.[2] Resp. Opp. Mot. Recons. 10–13, ECF No. 277.

---

[2] The Court notes a misstatement in the summary judgment opinion (ECF No. 264) in its analysis of the negligent supervision claims made against Defendants Fraction and Sherrard individually. The Court stated that "Defendants Fraction and Sherrard were at least negligent." *See* Mem. Op.

Porter suggests that had there been greater and more particularized oversight of the investigating officers, he would not have been wrongfully convicted. But Porter fails to show how more supervisory involvement would have changed the outcome of the investigation. The evidence of record establishes that it was the practice of the Louisville Police Department, at the time of this homicide investigation, to allow the lead detective on a case discretion in the investigation. *See* Hollingsworth Dep. I 213, ECF No. 241-11. The supervisors considered the detectives in the homicide division to be "seasoned investigators." Fraction Dep. 62, ECF No. 243-15; Sherrard Dep. 26, ECF No. 242-3.

In this case, Defendant Kidd exercised discretion in pursuing Porter as the prime suspect, and not crediting or pursuing Hollingsworth's suggestion that another individual may have committed the crime.[3] Given that the evidence shows that Defendant Kidd was aware of other leads but still pursued Porter, Porter is hard pressed to show that any amount of additional supervision would have yielded a different result. Hindsight shows that pursuit of another lead may have provided a viable alternative suspect in the case. However, Defendant Kidd's decision to pursue Porter, based upon all of the information of which he was apprised, was essentially where the rubber met the road in this case. While the nature and degree of supervision of Defendant Kidd's work could have been different, it is sheer speculation that such supervision would have impacted Defendant Kidd's decision-making. There has been no evidence presented to the Court that Defendant Kidd felt he was inadequately trained or needed more guidance or

---

68, ECF No. 264. This reads as an affirmative finding of negligence on the part of these defendants. For the reasons stated in the opinion, that remains an open question to be decided by a jury, not the Court. Rather, on summary judgment, the Court assumed, arguendo, that the supervisory officers were negligent, finding that Porter had failed to come forward with evidence that the officers' conduct was in bad faith, and concluding that they were entitled to qualified immunity. *Id.*

[3] Whether he properly exercised that discretion remains a jury question. *See* Mem. Op. 53, ECF No. 264.

supervision. There is thus insufficient evidence to support a claim for negligent supervision under the Restatement (Second) of Agency § 213(c) or (d).

Based upon the foregoing analysis, to correct a clear error or prevent manifest injustice, the Court will grant Defendants' motion for reconsideration of the summary judgment ruling. And the Court will grant summary judgment in favor of Defendants on Count VIII alleging negligent supervision.

V. Conclusion

The Court finds that reconsideration is appropriate and that Porter has failed to come forward with evidence on the negligent supervision claim which, in the words of the Supreme Court in *Matsushita, supra.*, presents more than "some metaphysical doubt as to the facts." The Court will grant Defendants' motion to reconsider the ruling on their motion for summary judgment and grant summary judgment to Defendants on the negligent supervision claim by separate order.

August 11, 2017

                                      **Charles R. Simpson III, Senior Judge**
                                          United States District Court